James D. Jack, Executor and Trustee under the Will
of Jordan S. Neel, Deceased, *v.* P. J. Forsyth, Surviv-
ing and Continuing Partner of P. J. Forsyth & Com-
pany, Appellant.

*Lease—Coal lease—Mines and mining—Royalties—Entry coal.*

Where a coal leasé provides for the payment of a royalty on each and
every bushel of coal mined, "the amount of coal so mined to be ascer-
tained and determined from the pay roll" of the lessee, royalties must be
paid upon "entry coal," which is coal taken out in the process of construct-
ing entries to reach the coal and to bring it out, and this is the case, al-
though the lessee does not note on the pay rolls the number of bushels of
entry coal mined.

Argued Nov. 3, 1899.    Appeal, No. 189, Oct. T., 1899, by
defendant, from decree of C. P. No. 1, Allegheny Co., June T.,
1898, No. 684, on bill in equity.    Before STERRETT, C. J.,
GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Af-
firmed.

Bill in equity for an account.

The facts appear by the opinion of COLLIER, J., which was
as follows:

This is a bill praying for an injunction, for the appointment
of a receiver, for an account, etc.

On October 4, 1898, the following consentable decree was
entered of record, viz:

"And now, October 4, 1898, this cause having come on for
hearing on bill, answer and replication, both parties by their
respective counsel being in court and consenting to this decree,
it is ordered, adjudged and decreed that the bill in this case be
and it is hereby dismissed upon the merits as to the 6th, 7th,
9th, 10th, 11th and 12th paragraphs; as to the allegations
in the 2d paragraph which read, 'That under the terms of
said agreement said defendant, P. J. Forsyth, was to give his
full time and attention to the business of P. J. Forsyth & Com-
pany,' and as to the 1st, 2d, 3d and 5th prayers, and also the
4th prayer, except so far as it prays for a decree for royalties
on entry coal, the defendant admitting his individual liability,

however, as set forth in the 9th paragraph of the answer, in the sum of four thousand four hundred and fifty-nine and $\frac{22}{100}$ dollars ($4,459.22) to the firm of P. J. Forsyth & Company. It being also admitted that the firm of P. J. Forsyth & Company is still indebted to the estate of Jordan S. Neel for the balance of five thousand dollars ($5,000) and a portion of its interest, as set forth in the 6th paragraph of the answer.

"This cause is held for further proceedings as to the one question only of the liability of the firm of P. J. Forsyth & Company to pay to the plaintiff, as executor under the will of J. S. Neel, deceased, royalty on entry coal.

                                        "By the Court.

"October 3, 1898, we consent to above decree.
                        "J. J. Miller,
                                "Solicitor for plaintiff.
                        "M. W. Acheson, Jr.,
                        "Geo. C. Wilson,
                                "Solicitor for defendant."

So the sole question for our determination is whether the defendant is liable for royalty on entry coal.

                        FINDINGS OF FACT.

1. Prior to January 1, 1892, Jordan S. Neel was the owner and operator of extensive coal works in Washington county, Pennsylvania.

2. On January 1, 1892, Jordan S. Neel entered into an agreement of copartnership with P. J. Forsyth, under the name of P. J. Forsyth & Company, for the purpose of carrying on the business of operating and mining coal, and cutting and sawing lumber.

3. Jordan S. Neel contributed as his part of the capital of the firm a lease for fifteen years, of twenty-four distinctly described tracts of coal lands, together with the store building, horses, stables, sawmill and other buildings, pit cars, mules, iron lines, pumping boat and all other machinery, fixtures and property, situate thereon and necessary. He also agreed to pay all the taxes, to pay one half of the expense of constructing a new haulage system, and also all the goods and merchandise in the store on said premises, pit posts, rails, lumber and all other personal property situate thereon.

4. P. J. Forsyth contributed $1,644.19, one half the estimated value of the personal property put in by Neel. Forsyth was to receive $2,500 per year for his services, and was to control and manage the business, with exclusive power to make contracts, sign notes, checks and papers in relation to said business. The partnership was to continue for fifteen years, unless the coal was sooner exhausted.

5. In the articles of copartnership this language is used: " That Jordan S. Neel, as his portion of the capital of said business, agrees to, and by a paper of even date herewith, duly signed and acknowledged, does upon the terms and conditions hereinafter expressed hereby lease to said firm all the coal property now owned by him, situate in East Pike run and adjoining townships, Washington county, state of Pennsylvania, known as the ' Greenfield Coal Works,' together with the store buildings, horses, stables, etc. In consideration whereof said firm of P. J. Forsyth & Company agrees to pay to the said Jordan S. Neel, as rental or royalty upon said coal, the sum of forty (40) cents for each and every 100 bushels of coal mined; the amount of coal so mined to be ascertained and determined from the pay roll of said firm."

And in the lease referred to as of January 1, 1892, this language is used: " The said parties of the second part hereby agree to pay to the said Jordan S. Neel the sum of forty (40) cents for each and every 100 bushels of coal mined and taken from said lands, as made up and taken from the pay roll at said works." This lease of the twenty-four pieces of coal lands is dated January 1, 1892, the same date of the articles of copartnership, and is the lease referred to in said articles. This lease was executed on January 25, 1892.

6. " Entry coal " is coal taken out in the process of constructing in the mine what are known as " entries," the purpose of which is to reach the body of coal and provide passageways to bring the coal out, and for the purpose of air. The construction of entries costs about double the value of the coal which is got out of them.

7. At the time of entering into the copartnership, Jordan S. Neel was in ill health, and from February 2 until March 8, 1892, was in the Homeopathic Hospital in Pittsburg, Pennsylvania, and from there went to the state of California, where he staid

several months.   He returned to Coal Centre in the summer
of 1892, and from that time on was at Coal Centre off and on,
as he had always been before, until the latter part of October
or November, 1892, when he returned to California, where he
died on March 5, 1893.

8. In the first pay roll of the new firm, on January 16, 1892,
royalty on entry coal for 2,064 bushels was reported and paid.
On the pay roll of February 6, 1892, the entry coal was calcu-
lated in bushels, but the royalty thereon was not paid.   On
the pay roll of February 19, 1892, 6,945 bushels of entry coal
were reported and the royalty thereon paid.   On the pay roll
of March 5, 1892, 6,794 bushels of entry coal were set forth,
but royalty thereon was not paid.   On the pay roll of March 19,
1892, the entry coal was calculated at 9,455 bushels, but no
royalty was paid thereon.   Since which date the number of
bushels of entry coal mined has not been calculated and carried
on the pay rolls, they only showing the number of yards of
entry coal mined.

The defendant refuses to pay royalty on " entry coal."

At the request of defendant we find the following additional
facts :

1. Jordan S. Neel, the plaintiff's decedent, for a continuous
period of many years, down until his death on March 5, 1893,
owned a certain coal mine at Coal Centre, Washington county,
Pennsylvania, then and still known as the Greenfield Coal
Works.

2. Said Neel, for a continuous period of many years, down
until the end of the year 1891, individually mined and operated
said mine.

3. For a continuous period of many years, down until the
end of the year 1891, during which period said Neel operated
said mine, his unvarying practice at said mine was to pay by
the bushel miners who mined coal from the rooms, and to pay
by the yard miners who drove entries.

4. Defendant as managing partner took charge of the busi-
ness of the firm on February 1, 1892.   Thereafter, until March 5,
1893, said mine was operated by said firm, as per article of
agreement, and continuously since March 5, 1893, down to the
present, defendant as surviving and continuing partner under
said articles has carried on said business and operated said mine.

5. The method of operating said mine and of paying its miners, during the said partnership, both before and since March 5, 1893, has been the same as that pursued by said Neel when he operated said mine.

6. During said partnership pay rolls have been made up by the bookkeeper every few weeks, and on each pay roll the miners mining room coal in said mine have uniformly been credited thereon simply with a given number of bushels, and the miners driving entries in said mine always simply with a given number of yards.

7. Throughout said partnership a special royalty account has been kept, the items of which consist of bushels of coal carried consecutively from the firm pay rolls.

8. A Mr. Jackman, who was Neel's bookkeeper at said mine when said firm took charge, continued on as said firm's bookkeeper for a year or more, and during said year or more kept said pay rolls and account. Said Jackman, when this case was being tried, was living about one mile from Coal Centre in the employ of two of said Neel's heirs.

9. Said articles of partnership were executed on January 2, 1892. Defendant then went to Cincinnati and returned to Coal Centre in the latter part of the said month of January, after the 20th thereof.

We also find that the number of bushels of entry coal mined can easily be ascertained from the number of yards on the pay rolls which should show them paid for to the miners, and that each yard of entry coal mined contained about eighty bushels of coal.

### FINDINGS OF LAW.

The agreement of partnership and the lease, both dated on the same day, differ little in the words relating to the payment of royalty to the landlord Neel. The former states that P. J. Forsyth & Company " agrees to pay to the said Jordan S. Neel as rental or royalty upon said coal the sum of forty cents for each and every 100 bushels of coal so mined, to be ascertained from the pay roll of said firm." The lease provides that " said parties of the second part hereby agree to pay to the said Jordan S. Neel the sum of forty cents for each and every 100 bushels of coal mined and taken from said lands, as made up and taken

from the pay rolls at said works." The lease and copartnership agreement both contemplated the exhaustion of the coal.

We think the words of the contract are plain and clear and mean just what they say, viz : that the defendant is to pay royalty on each and every 100 bushels of coal "mined and taken from said lands," the amount "to be ascertained from the pay rolls of said firm," and that this includes entry coal mined and taken from said lands. There seems to us no ambiguity about the contract. The number of bushels of coal mined and taken from the lands can be easily ascertained from the pay rolls of said firm, which should show the number of yards mined, notwithstanding the defendant from March 19, 1892, and since the death of Neel, has discontinued noting on the pay rolls the number of bushels of entry coal mined. Nor do we find anything in the evidence to justify us in holding that the contract does not include entry coal. The evidence is too vague, uncertain and contradictory to justify us in holding that the words, "except entry coal," should be read into the contract, or to show that Neel intended to exclude royalty on entry coal.

We are of opinion that the defendant must account for all the entry coal mined and taken from the lands of Neel, and for which he must pay forty cents for every 100 bushels, except the amounts on the pay rolls of January 16, 1892, and February 19, 1892, which he has paid ; and that every yard of entry coal mined shall be computed at eighty bushels.

Let a decree for an account be drawn and submitted.

*Error assigned* was the decree of the court.

*M. W. Acheson, Jr.*, with him *George C. Wilson* and *Wm. D. Evans*, for appellant.—Under the facts which the court found the appellant's interpretation is the only rational construction.

Entry men have uniformly been paid on the basis of yards, and not of bushels, both by Neel and by the firm : Lacy v. Green, 84 Pa. 514 ; Beach on Contracts, sec. 719 ; Berridge v. Glassey, 112 Pa. 442.

Had the parties intended to charge entry coal with royalty they would have chosen the tipple sheet instead of the pay roll. If entry coal is chargeable with royalty, why is there no royalty on slack ?

The appellant's interpretation is that of the parties themselves, as evidenced by (1) their acts, and by (2) their declarations. This is the best evidence: Beach on Contracts, sec. 723; Pratt v. Campbell, 24 Pa. 184; Berridge v. Glassey, 112 Pa. 442; Lehigh Coal & Navigation Co. v. Harlan, 27 Pa. 429; Straus v. Wanamaker, 175 Pa. 213; Centenary Church v. Clime, 116 Pa. 146; Wilson v. Fenimore, 3 Cent. Rep. 538; Selden v. Williams, 9 Watts, 9; Stoops v. Smith, 100 Mass. 63; Bartels v. Brain, 13 Utah, 162; Conover v. Wardell, 20 N. J. Eq. 266.

*J. J. Miller*, for appellee.

PER CURIAM, December 30, 1899:

As shown by the decree of October, 1898, referred to by the learned trial judge in his opinion, the issue theretofore formed by the pleadings was narrowed and restricted " to the one question only of the liability of the firm, P. J. Forsyth & Company, to pay to the plaintiff, as executor of the will of J. S. Neel, deceased, royalty on entry coal." After the entry of that decree by consent of the parties, further proceedings were had, substantially within the lines of the issue thus restricted, which resulted in the findings and conclusions upon which the decree of September 16, 1899, for an account, etc., is based. By that decree it was adjudged:

" 1. That the firm of P. J. Forsyth & Company is liable to pay to the plaintiff . . . . royalty on entry coal.

" 2. That an account be taken and stated of the number of bushels of entry coal mined and taken under the lease of Jordan S. Neel to P. J. Forsyth & Company, to be computed by the number of bushels of coal in each yard of entry to be determined on the accounting.

" 3. That the costs be paid by P. J. Forsyth & Company."

In their specifications the learned counsel for appellant company allege error in sundry findings, conclusions, rulings, etc., of the learned trial judge, leading up to said decree. The questions involved were ably and exhaustively discussed by the learned counsel on both sides in their respective printed, as well as oral, arguments.

A careful review of the record and consideration thereof with reference to the several specifications has failed to convince us that there is any error therein that would justify either a re-

versal or modification of the decree. On the contrary, we are all satisfied that the learned judge's findings of fact, conclusions of law and other rulings, including his construction of the lease, under which the controlling question in the case arises, are substantially correct. It is not our purpose, nor, in view of what has been said by the court below, do we think it necessary, to discuss any of the specifications of error.

The decree is affirmed on the opinion of the learned trial judge and the appeal is dismissed at appellant's costs.